UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.

Criminal No. 16-cr-143-JD
Opinion No. 2020 DNH 209

Anthony Barth

O R D E R

Anthony Barth, proceeding pro se, filed a motion for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Counsel was appointed to represent him, and counsel filed a supplemental motion to have Barth's sentence reduced based on the combined effects of his medical conditions, the risks presented by the COVID-19 pandemic, and the conditions of confinement due to the pandemic.[1]  The government objects to the motion.  The Office of Probation and Pretrial Services has filed a report.

Standard of Review

A defendant may file a motion in court for a reduced sentence under § 3582(c)(1)(A) in certain circumstances.  The

---

[1] Although Barth requested a hearing on the motion, he did not provide a statement to show why a hearing was necessary or why oral argument would provide assistance to the court.  LR 7.1(d).  Therefore, no hearing was held.

defendant must have "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or, thirty days must have passed since the warden at the defendant's facility received the defendant's request without a response.  Id.  If a defendant has satisfied the administrative exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "extraordinary and compelling reasons warrant such a reduction" and "after considering the factors provided in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  § 3582(c)(1)(A).  The statute also directs consideration of whether the requested "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A).

The applicable policy statement is United States Sentencing Guidelines § 1B1.13.  That guidance provides that a defendant's term of imprisonment may be reduced if extraordinary and compelling reasons warrant the reduction or the defendant meets the age and time-served requirements and the defendant is not "a danger to the safety of any other person or to the community" and the reduction is consistent with the policy statement.  See United States v. Jones, 2020 WL 6205783, at *2 (D. Mass. Oct. 22, 2020).  Application Note 1 to U.S.S.G. § 1B1.13 provides additional

guidance as to when an extraordinary and compelling reason to reduce a defendant's sentence may exist.  Those reasons include medical conditions, age, family circumstances, and extraordinary and compelling reasons "other than, or in combination with, the reasons described."  BOP Program Statement 5050.50 also provides guidance as to when post-sentencing developments, medical conditions, age, and family circumstances will support a motion for sentence reduction under § 3582(c)(1)(A).  Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019), www.bop.gov/policy/progstat/5050_050_EN.pdf.

## Background

Anthony Barth pleaded guilty on June 5, 2017, to two counts of distribution of fentanyl and one count of possession with intent to distribute fentanyl.  He was sentenced to 168 months of incarceration and has served approximately 30% to 35% of his sentence.  He is now incarcerated at FCI Berlin.

Barth is twenty-nine years old.  In 2017, for purposes of the presentence investigation, he denied any chronic medical conditions or ailments except for migraines.  During 2020, he has had elevated blood pressure readings, but he has not

submitted a medical diagnosis of hypertension.  He states that he was diagnosed with anxiety in March of 2020.[2]

The government had Barth's medical records reviewed by Dr. Gavin Muir, Chief Medical Officer at Amoskeag Health in Manchester, New Hampshire.  Dr. Muir reports that Barth's two elevated blood pressure readings might result in a diagnosis of hypertension but could also simply be elevated blood pressure readings without hypertension.  Dr. Muir explains that blood pressure rechecks by a medical provider after support staff found an elevated pressure are often lower but those were not done in Barth's case.  Dr. Muir also notes that Barth had normal readings previously, that he is only twenty-nine years old, and that his weight has not changed significantly since his normal readings.  In Dr. Muir's opinion, additional information would be necessary to determine whether Barth has hypertension.  Dr. Muir notes that Barth has a history of anxiety.

The government provides information about the efforts taken by the BOP to control COVID-19 infections in its prisons.  Barth states in his motion that he was in lock down at MDC Brooklyn from April 1 to July 10 and then at FCI Berlin until August 6 because of the prisons' response to the COVID-19 pandemic.

---

[2] Although Barth cites a page in his medical records in support of his diagnosis, it does not appear that his medical records were submitted to the court.

4

Barth states that on November 4, 2020, FCI Berlin was experiencing a spike in COVID-19 cases among its inmates and staff and provides a graph that shows there were eight cases at that time. Three and a half weeks later, the Bureau of Prisons ("BOP") reported two active cases of COVID-19 among the staff at FCI Berlin and two active cases among inmates.[3] https://bop.gov/coronavirus/ (last visited on November 30, 2020). As is widely reported in the news, cases of COVID-19 are increasing across the country and in New Hampshire.

Before his sentencing, Barth was held at the Strafford County Jail where he received disciplinary reports for a positive drug test and for fighting. While in BOP custody, Barth has received three disciplinary reports. He has participated in classes, and he has had a work detail since July. The BOP has assessed Barth's risk for reoffending at medium.

If he were released from prison, Barth plans to live in an apartment in Manchester, New Hampshire, that would be rented by his family for him. His mother and brother share a house in

---

[3] Barth suggests that the BOP website does not report as many COVID-19 cases in its facilities as are reported by the Office of the Inspector General ("OIG") of the Department of Justice. In addition to the BOP website, the court viewed the OIG website link, arcgis.com, provided by Barth and found that as of November 30, that site reported FCI Berlin to have only one active case while the BOP reports four cases.

5

Manchester, and the plan is that Barth's apartment would be near them.  His family intend to find a larger house where Barth could live with them.

## Discussion

Barth contends that he has hypertension and anxiety that cause him to have an increased risk of death or serious illness if he were infected with COVID-19, which presents an extraordinary and compelling reason to reduce his sentence to time served.  Alternatively, he asks the court to resentence him to 120 months of incarceration based on extraordinary and compelling reasons presented by the COVID-19 risk and the current prison conditions at FCI Berlin.  The government opposes the motion, arguing that Barth has not shown an extraordinary and compelling reason to support reduction in his sentence and that the sentencing factors under § 3553(a) weigh against reduction.

A.  Extraordinary and Compelling Reason

Based on his counsel's research, Barth asserts that he has hypertension, which would increase his risk of death or severe illness from COVID-19.  He has not been diagnosed with hypertension.  Dr. Muir provided his opinion that Barth has not

been diagnosed with hypertension and that his blood pressure readings do not necessarily support that diagnosis.

Even if Barth could show a diagnosis of hypertension, that would not be sufficient, by itself, to support his claim. As the government points out, the CDC has recognized that hypertension or high blood pressure might cause increased risk for severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 30, 2020). Barth has not shown that his condition necessarily would cause an increased risk. Therefore, Barth has not shown that he has hypertension that would put him at higher risk if he were to be infected with COVID-19.[4]

Barth also argues that his history of anxiety in combination with his hypertension causes an increased risk with COVID-19. In support, Barth does not cite CDC guidance or a medical opinion to show that his anxiety increases his risk from COVID-19. Instead, he relies on cases which recognize that mental health issues, including stress, anxiety, and depression,

---

[4] To the extent that Barth argues he would be safer living in an apartment in Manchester rather than in prison, he has not shown that to be an extraordinary and compelling reason to reduce his sentence.

can lead to vulnerabilities and other needs that could be the basis for reducing a prisoner's sentence.  In the absence of any evidence that Barth's anxiety is causing him to experience specific vulnerability to COVID-19 or other problems that show an extraordinary and compelling reason to reduce his sentence, his anxiety condition does not support granting his motion.

Because Barth has not shown an extraordinary and compelling reason to reduce his sentence, his motion would be denied on that basis alone.[5]  Even if he could make that necessary showing, however, the sentencing factors under § 3553(a) weigh against reducing his sentence.

B.  Sentencing Factors

Section 3553(a) states that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" provided in § 3553(a)(2), and lists factors for determining an appropriate sentence.  The first two factors are particularly pertinent for purposes of a motion for

---

[5] Barth represents that he has satisfied the exhaustion requirement by requesting relief from the warden in August, without a response for more than thirty days.  The government agrees that he has satisfied the exhaustion requirement.

8

reduction of a defendant's sentence.[6]  The first factor directs the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  § 3553(a)(1).  The second factor focuses on the purposes of sentencing, including:

> the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).

The court considered the § 3553(a) factors when Barth was sentenced to 168 months in prison, which was an appropriate sentence for his serious crimes and in light of his criminal history.  Barth was convicted of distributing fentanyl and possessing with intent to distribute fentanyl, which is a very dangerous drug.  In addition, before that crime, he was convicted of drug trafficking-related crimes, served a prison

---

[6] The third factor directs consideration of "the kinds of sentences available;" the fourth and fifth factors focus on the Sentencing Guidelines; the sixth factor addresses "the need to avoid unwarranted sentence disparities;" and the seventh factor directs courts to consider the defendant's restitution obligations.

9

sentence, and violated parole by selling drugs again.  Barth has served only approximately one third of his sentence.

The intervening change caused by the COVID-19 pandemic does not support a reduction in Barth's sentence.  Therefore, based on the § 3553(a) factors, Barth's sentence remains appropriate without reduction.

C.  Conditions of Confinement

Alternatively, Barth asks that his sentence be reduced to 120 months because of the time he has spent in lock down due to the prison's response to the COVID-19 pandemic.  He contends that the conditions of his confinement have imposed additional punishment on him so that he should be given more credit for the time he has served under punitive conditions.

Although a few courts have considered the conditions of an inmate's confinement in deciding motions under § 3582(c)(1)(A), the particular circumstances that existed in those cases do not apply here.  In United States v. Macfarlane, 438 F. Supp. 3d 125, 127 (D. Mass. 2020), the court reduced a six-month sentence to time served based on crediting two weeks of solitary quarantine time as two months of prison time.  In United States v. Indarte, 2020 WL 6060299, at *4 (W.D. Ind. Oct. 14, 2020),

10

the inmate was elderly and had only eight months left to serve on his sentence.

In contrast, Barth has a lengthy sentence with two-thirds of the time remaining.  Further, the conditions of confinement that Barth describes are not unique to him and instead have been imposed generally for the safety of inmates and staff because of the pandemic.  Barth has not presented an extraordinary and compelling reason to reduce his sentence and without that showing, relief is not available.  See United States v. Benoit, 2020 WL 6060885, at *2, n.3 (D. Me. Oct. 14, 2020).


## Conclusion

For the foregoing reasons, the defendants' motions for a reduction in his sentence (documents nos. 47 and 52) are denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

December 3, 2020

cc: Counsel of record.

11